# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0064-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

C. E. S.,[1]

     Defendant-Appellant.

_____

Submitted October 14, 2025 – Decided November 3, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 22-11-1054.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of

---

[1] We use initials and pseudonyms to maintain the confidentiality of sealed records under Rule 1:38-11 and to protect the privacy of the victim of sexual violence pursuant to Rule 1:38-3(c)(12).

counsel and on the brief; John J. Scaliti, Legal Assistant, on the brief).

PER CURIAM

After a jury convicted defendant of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2)(c), third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1), the court sentenced him to an aggregate eighteen-year custodial term, subject to an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, with parole supervision for life with respect to the first-degree charge. The court also imposed applicable fines and penalties and ordered defendant to register pursuant to Megan's Law.

Defendant challenges his convictions and sentence and raises the following arguments:

> POINT I: DEFENDANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY A JURY INSTRUCTION THAT IMPROPERLY DIRECTED THE JURY TO DISREGARD THE STATE'S FAILURE TO CORROBORATE A CENTRAL FACET OF GINA'S ALLEGATIONS.

> POINT II: IF THE CONVICTIONS ARE NOT REVERSED, THE MATTER SHOULD BE REMANDED FOR RESENTENCING TO A PRISON

A-0064-23

TERM THAT IS NOT MANIFESTLY EXCESSIVE
AND UNDULY PUNITIVE.

I.

The State brought charges against defendant based on his repeated sexual assaults of Gina[2], his girlfriend Ruby's daughter from a previous relationship. Gina was born in 2005 and between 2006 and 2018, defendant and Ruby participated in an on-again, off-again romantic relationship. Defendant moved in with Ruby and Gina in Ridgefield Park in 2008, and defendant and Ruby's child, Ariel, was born in 2010. In 2011, defendant and Ruby's relationship ended and in 2012, Ruby, Gina, and Ariel moved to Garfield. A year later, defendant and Ruby reconciled, and defendant moved into the Garfield home.

Ruby testified she worked long hours, and her job required her to travel. Defendant, however, was home from work by the time Gina and Ariel returned from school, and he would watch them in Ruby's absence. Ruby further stated that defendant acted as the primary disciplinarian for the children, and would ground them, take away electronic devices, and prevent them from playing with friends when they misbehaved.

---

[2] We use initials and pseudonyms to maintain the confidentiality of sealed records under Rule 1:38-11, and to protect the privacy of the victim of sexual violence pursuant to Rule 1:38-3(c)(12).

 A-0064-23

Defendant lost his job in February 2018. He and Ruby broke up again that year, and defendant relocated to Paterson. Gina, who viewed defendant as a father figure, continued to visit him in Paterson before reconnecting with her biological father.

In August 2019, Gina disclosed to her biological father's wife, who informed Ruby, that defendant had been sexually abusing Gina. Two days later, Gina and Ruby provided statements to the Bergen County Prosecutor's Office concerning the abuse.

During the interview, Gina explained defendant began assaulting her in the summer of 2017. She stated defendant would kiss her on the lips and instructed her to open her mouth, entered her room late at night and told her to take her pants off, touched her vagina and digitally penetrated her, and repeatedly asked her to perform oral sex. Gina further disclosed defendant vaginally penetrated her with his penis on multiple occasions at the Garfield residence, in both her bedroom and the living room, and at his apartment in Paterson. Gina explained defendant would assault her approximately three times per week when he lived in Garfield, and once or twice per weekend when she would visit his residence in Paterson.

A-0064-23

Gina explained on one occasion, Ariel walked in on her and defendant having sex on the living room couch of the Garfield residence. Additionally, during an argument with defendant, she stated he threatened to show Ruby a sex tape he created of the two engaging in intercourse. Gina stated she believed the video was stored on defendant's cellphone. In her interview with the prosecutor's office, Ariel denied observing defendant and Gina on the couch naked at any time.

The Prosecutor's Office also interviewed defendant, who denied the allegations and voluntarily turned over his two cell phones. The next day, defendant attempted to commit suicide by plumbing his vehicle's exhaust fumes into the passenger compartment with a garden hose. After police were alerted to the situation, they seized three envelopes from the passenger seat of defendant's vehicle which contained letters addressed to Gina and Ruby, and a third envelope addressed to defendant's brother.

At a N.J.R.E. 104 hearing to determine Ariel's competency to testify, Ariel recanted her statement and admitted she did not tell the truth during her initial interview with the Prosecutor's Office because defendant "told [her] not to tell the truth, . . . not to tell . . . family business to anyone that was not family or was

a stranger." Following her recantation, defense counsel informed the court he no longer intended to call Ariel as a witness.

Throughout trial, defendant's counsel, from opening statement, during cross-examination of the State's witnesses, to closing arguments, vigorously contested the State's case and challenged Gina's credibility. Relevant to defendant's primary argument before us, during closing arguments, counsel argued the State failed to prove its case beyond a reasonable doubt because it failed to present evidence to corroborate Gina's accusations. Counsel stressed the State's case lacked any corroborative forensic evidence: the video Gina alleged existed was never located, even though defendant voluntarily turned over two cell phones; an examination of the phones failed to reveal any messages between defendant and Gina of a sexual nature; and neither Ruby nor any other resident of the family's various homes witnessed any inappropriate conduct between defendant and Gina, despite some of the assaults allegedly having occurred while other people were in the home.

Defense counsel told the jury they "must decide the case based on the facts that were presented . . . based upon the decision by the State not to have [Ariel] testify in this matter." The State objected, and stated to the court at sidebar that

6

defense counsel was making an inappropriate "Clawans[3] argument without filing a . . . motion," and that the jury should be instructed "not [to] make an inference as to why witnesses were presented or not presented but base their decision on the evidence that was presented."

Defense counsel disagreed with the prosecutor's characterization and stated he was "not suggesting to [the jury] that they have to make any inference," but instead "they have to make a decision based upon the evidence that they received in this case or lack thereof." He further indicated he "would object" to the State's proposed curative language to the jury instructions and requested that the parties be permitted to complete their closing arguments.

The State and the court agreed that the parties would complete closing arguments and when the prosecutor finished, she reprised her objection to defense counsel's statement and again requested the court "instruct the jury that they cannot make an inference as to why witnesses were called or not called, and they should base . . . their decision on the evidence that is before them." Defense counsel again disagreed with the prosecutor's proposal, and noted he only made an appropriate argument that "the jurors can find reasonable doubt based upon either the evidence they were given or evidence that was not

---

3  State v. Clawans, 38 N.J. 162 (1962).

A-0064-23

contained in the case," and the court did not need to highlight the issue in the jury instruction "because it's already in the charge." The court agreed with the prosecutor and instructed the jury in its final charge that the jury "cannot make any inference as to why a witness was called or not called. You must make your decision solely on the evidence before you."

As noted, the jury convicted defendant on three charges, and the court sentenced him to an eighteen-year aggregate term. In doing so, the court considered the parties' arguments, victim statements, and submissions, including defendant's Avenel report, and applied aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk of re-offense); six, N.J.S.A. 2C:44-1(a)(6) (prior criminal record); and nine, N.J.S.A. 2C:44-1(a)(9) (the need for deterrence), and rejected defendant's request for the application of mitigating factor eight, N.J.S.A. 2C:44-1(b)(8) (conduct the result of circumstances unlikely to recur).

The court ascribed significant weight to aggravating factor three, moderate weight to aggravating factor six, and heavy weight to aggravating factor nine. The court supported its findings for the aggravating factors based on, among other determinations, defendant's extensive criminal history, significant "number of contacts with the criminal justice system," and the findings in the Avenel report. The court did not find any applicable mitigating

A-0064-23

factors, and concluded the aggravating factors outweighed the non-existent mitigating factors.

## II.

In his first point, defendant contends the court's supplemental, curative instruction denied him "due process and a fair trial." He explains because Gina's credibility was his only plausible defense, the court's instruction improperly removed his credibility-based argument "from the jury's consideration" by directing them "not [to] draw any inference from the State's failure" to prove that Ariel saw "Gina and defendant having sex on the living room couch as Gina had alleged."

Defendant further argues the court incorrectly relied on Clawans when it sustained the State's objection to his summation because he merely highlighted that the "State did not carry its burden of proof," and did not attempt to have the jury draw an adverse inference from Ariel's absence. He maintains "the thrust of the [Clawans] charge is not that a missing witness had left holes in the proofs. It is that the jury is permitted to infer that those holes would have been filled with affirmatively damaging evidence." He therefore argues the jury charge "obliterated this important distinction," indicated "an absence of corroborative proof was not a significant concern," "unmistakably convey[ed] to the jury that

9

defendant's central [credibility] defense must be rejected," and, thus, was "undeniably harmful."

In response, the State argues defense counsel "sought an unwarranted and unfair advantage" because he "urged the jury to draw an adverse inference based on the State's failure to call Ariel" without complying with the requirements of Clawans and Hill.[4] Further, it maintains the two additional sentences added by the court were appropriate because "[t]hey simply directed the jurors to assess the evidence adduced and cautioned the jurors that speculation as to why a party did not call certain witnesses would be improper" and "did not direct the jurors that they could not factor in the absence of proof in reaching their verdict."[5] Next, the State maintains the instruction was neutral, "did not reference either the State or the defense," and arguably worked in defendant's favor because it addressed defense counsel's "broken promise" to call Ariel as a witness. Finally,

---

[4] State v. Hill, 199 N.J. 545 (2009).

[5] The State also relies on the First Circuit's decision in United States v. Aboshady, 951 F.3d 1, 13-21 (1st Cir. 2020) and explains, in that matter, the "trial court's instruction that [the] jury could not draw [an] adverse inference against [the] government due to its failure to call [a] witness did not dilute [the] government's burden of proof; this curative instruction simply cautioned jurors that they should not speculate as to why [a] witness was not called and did not prevent [the] jury from considering the lack of testimony in determining whether [the] government had met its burden of proof."

A-0064-23

the State argues the "curative instruction did not diminish defendant's right to present a complete defense."

We first consider defendant's challenge to the jury charges, recognizing "[a]ppropriate and proper charges to a jury are essential for a fair trial." State v. Carrero, 229 N.J. 118, 127 (2017) (quoting State v. Daniels, 224 N.J. 168, 180 (2016)). "The proper standards of review of jury instructions are well-settled: if the party contesting the instruction fails to object to it at trial, the standard on appeal is one of plain error; if the party objects, the review is for harmless error." State v. Cooper, 256 N.J. 593, 607 (2024) (quoting Willner v. Vertical Reality, Inc., 235 N.J. 65, 80 (2018)).

In assessing the adequacy of a jury instruction, "[t]he charge must be read as a whole" to determine its overall effect. State v. Torres, 183 N.J. 554, 564 (2005) (citing State v. Wilbely, 63 N.J. 420, 422 (1973)). In so doing, "[t]he test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law" with respect to the relevant issue. State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997)).

"Nevertheless, 'not every failure to do so is fatal.'" State v. Tierney, 356 N.J. Super. 468, 482 (App. Div. 2003) (quoting State v. Bilek, 308 N.J. Super.

11

1, 10 (App. Div. 1998)); see, e.g. State v. Morton, 155 N.J. 383, 422 (1998) (explaining that the trial court properly charged the jury because "the facts were not so complex or confusing as to require an intricate discussion in the charge"); State v. White, 326 N.J. Super. 304, 315 (App. Div. 1999) (holding that "the charge given, as a whole, was consistent with the factual theories advanced by the parties").  In addition, the purported error "must be evaluated in light 'of the overall strength of the State's case.'"  State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

An error that was unchallenged in the trial court "constitutes plain error if it was 'clearly capable of producing an unjust result.'"  State v. Singh, 245 N.J. 1, 13 (2021) (quoting R. 2:10-2).  To assess whether a claimed error constitutes plain error, it "must be evaluated 'in light of the overall strength of the State's case.'"  Id. at 13-14 (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)).

A harmless error occurs when there is "some degree of possibility that [the error] led to an unjust result."  State v. Baum, 224 N.J. 147, 159 (2016) (alteration in original) (quoting State v. Lazo, 209 N.J. 9, 26 (2012)).  "The possibility must be real, one sufficient to raise a reasonable doubt as to whether [the error] led the jury to a verdict it otherwise might not have reached."  Cooper,

A-0064-23

256 N.J. at 608 (alteration in original) (quoting Baum, 224 N.J. at 159). We note that "[e]rroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error." State v. McKinney, 223 N.J. 475, 495-96 (2015) (alteration in original) (quoting State v. Afanador, 151 N.J. 41, 54 (1997)).

Initially, we address the parties' dispute regarding the applicable standard of review. The State contends defendant did not preserve his objection to the charge and thus the plain error standard applies. Specifically, it maintains that at no point during the discussion with the court after closing arguments, nor after the court charged the jury, did defense counsel object to the instruction. According to the State, those omissions: failed to alert the "prosecutor and, more importantly, the trial court that the proposed modification to the charge violated defendant's due process rights," "deprived the trial court of the opportunity to assess whether the curative instruction impacted negatively on defendant's right to present a complete defense," and deprived us "the benefit of a more detailed analysis by the trial court." We disagree with the State's arguments only with respect to the plain error standard of review.

As noted, during closing arguments, after the prosecutor objected to defense counsel's comments about the State's failure to call Ariel, the court

sustained the objection and ultimately provided the supplemental language. We are satisfied based on defense counsel's colloquy with the court, and specifically his expressed disagreement with the prosecutor's position and the judge's ruling, that he sufficiently preserved the issue, and therefore the harmless error standard applies.

We are convinced, however, that the court's decision to add the non-controversial supplemental curative instruction did not constitute error, harmless or otherwise. Contrary to defendant's arguments, the supplemental language did not prevent defendant from presenting a complete defense nor did it introduce "some degree of possibility that [the error] led to an unjust result." Baum, 224 N.J. at 159 (alteration in original) (quoting Lazo, 209 N.J. at 26).

To illustrate the point, we stress again, that throughout trial–from his opening statement to closing argument–defendant's counsel forcefully attacked Gina's credibility. Indeed, defense counsel argued in his opening that Gina's allegations are unbelievable because she had a history of lying; there was no evidence, forensic or otherwise, to corroborate her story; and that she had motive to lie about defendant because of his role as the disciplinarian.

During cross-examination of Ruby, counsel elicited testimony that she was concerned about Gina's welfare; had numerous conversations with

defendant about him disciplining Gina; and once found pornography on her personal tablet after Gina had access to it.  Defense counsel similarly attacked her credibility during closing arguments and, despite the prosecutor's objection to his statement with respect to Ariel's missing testimony, the court did not instruct the jury to disregard any portion of that argument.  It is beyond dispute defendant was afforded an ample opportunity to present a complete defense and, in fact, repeatedly challenged the State's case by impeaching Gina's credibility.

Further, the supplemental language merely restated principles already contained in the court's instructions which were based on the Model Jury Charges, a point in which defendant's counsel agreed.  Indeed, counsel himself, during the sidebar conversation stated, "I don't think you need to highlight it myself, Judge . . . because it's already in the charge."

Further, the court also informed the jury that the:  1) State had the burden of proof, 2) lack of evidence could establish reasonable doubt, 3) jury could evaluate a witness' testimony based on the lack of corroboration, 4) words of attorneys are not evidence, and 5) jury could only rely on evidence presented at trial, and the attorneys may highlight what they think is important, but the jury is only to rely on their recollection of the evidence presented.  Based on our review of the charge as a whole, see Torres, 183 N.J. at 564, we are convinced

15

defendant has failed to "raise a reasonable doubt as to whether [the error] led the jury to a verdict it otherwise might not have reached." Cooper, 256 N.J. at 608 (alteration in original) (quoting Baum, 224 N.J. at 159). The charge was neutral and was not misleading and accurately and fairly set for the applicable legal principles. Baum, 224 N.J. at 159.

We would be remiss if we did not address the context of defense counsel's statement during closing arguments. During opening statements, counsel made the following statement to the jury regarding Ariel:

> Her own sister was dragged into this case by Gina because she said . . . Ariel . . . saw the sexual assault. She came down[, and w]e were on the couch and she observed us.
> You're going to find out that Ariel didn't see that. Now[,] the State doesn't want to call . . . Ariel, and the State doesn't want the fact to come out to you because what I tell you here is not evidence.
> Then the defense will call her because we want you to have all of the facts. That's the only way . . . that you can arrive at a true and fair verdict in this particular case.

As noted, defense counsel elected not to call Ariel, despite his promise to the jury he would do so, assumedly based on Ariel's recantation of her initial statement to the Prosecutor's office and defendant's role in her initial exculpatory statement. The court was well aware of what transpired during trial

A-0064-23

and its decision to provide a neutral, additional instruction in light of these facts was entirely appropriate.

Simply put, and contrary to defendant's arguments, nothing in the court's instructions "diminished" the State's burden of proof or in any way impeded defendant's opportunity to present a robust defense. It merely stated a party's failure to call a witness was not evidential. In light of our decision that the court did not err in including the supplemental language in the charge, we need not address the State's argument that defendant's statement to the jury also violated Clawans.

## III.

In his second point, defendant challenges his sentence. He contends that a "proper finding and weighing of aggravating factors should have resulted in the imposition of a [fifteen]-year NERA sentence" and "if the convictions are not reversed . . . the matter should be remanded to the trial court for resentencing." He argues for the first time before us the sentencing "court should have found mitigating factor [eleven], that imprisonment would entail excessive hardship to defendant [N.J.S.A. 2C:44-1(b)(11)]" because he suffers from a chronic inflammatory eye disease "which has led to significant vision loss and will eventually leave defendant blind." He maintains medical treatment

A-0064-23

in prison is "undeniably worse than that available to a free citizen," he "requires cataract surgery," and "regular treatment from an ophthalmologist" "to forestall blindness and preserve what poor vision he has remaining."

Next, defendant argues "the sentencing court gave too much weight to the typical interrelated recidivism factors," i.e., factors three, six, and nine.  He maintains, "to a large degree, [his] substantial criminal history is the reason that all three aggravating factors were assigned significant, moderate, or heavy weight" and that "it was error to accord each so much weight when they share the same factual core."  Therefore, defendant contends "the [eighteen]-year NERA sentence is manifestly excessive, particularly because defendant must serve nearly the entire sentence."

In reviewing a sentencing decision, we must "decide[] whether there is a clear showing of abuse of discretion."  State v. Bolvito, 217 N.J. 221, 228 (2014) (citation and internal quotation marks omitted); see also State v. Blackmon, 202 N.J. 283, 297 (2010) ("Appellate review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard.").  A sentence must be affirmed unless: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not based upon competent credible evidence in the record; or (3) the application of the guidelines to the facts of the

case shock[s] the judicial conscience." Bolvito, 217 N.J. at 228 (alteration in original) (citation and internal quotation marks omitted).

The ordinary term for a first-degree offense is between ten and twenty years, N.J.S.A. 2C:43-6(a)(1), and thus defendant's sentence of eighteen years subject to NERA complied with the sentencing guidelines. In determining the appropriate sentence to impose within that range, judges "must identify any relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b) that apply to the case." State v. Case, 220 N.J. 49, 64 (2014) (citing State v. Fuentes, 217 N.J. 57, 72 (2014)). "The finding of any factor must be supported by competent, credible evidence in the record." Case, 220 N.J. at 64 (citing State v. Roth, 95 N.J. 334, 363 (1984)). "Whether a sentence should gravitate toward the upper or lower end of the range depends on a balancing of the relevant factors." Ibid. (citing Fuentes, 217 N.J. at 72).

We discern no abuse of the court's discretion in sentencing defendant to an eighteen-year aggregate custodial term subject to NERA and reject all of defendant's arguments. In applying aggravating factors three, six, and nine, the court considered defendant's extensive criminal history and the need to deter both defendant and others from committing the crime of sexual assault, and the recidivism rate for sexual offenders as informed by the Avenel report.

Defendant does not challenge the factual bases the court relied upon in applying these factors, and we see no reason to disturb the court's well-supported legal conclusions.

Further, we reject defendant's contention the sentencing court should have found mitigating factor eleven due to his eye condition. Mitigating factor eleven was clearly inapplicable as defendant failed to illustrate or articulate how his eye condition would cause him "excessive" hardship while imprisoned. State v. M.A., 402 N.J. Super. 353, 369-72 (App. Div. 2008) (affirming a trial court's finding that the defendant's affliction with AIDS did not render prison an excessive hardship). We are satisfied defendant's arguments for the application of mitigating factors are unmoored to the record and the applicable case law and the court's sentence was consistent with the Code of Criminal Justice.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

20                                                              A-0064-23